Case number 317-0639. The estate of Thelma B. Pennington, deceased. Apologized 0 bucks per second. Versus the American Red Cross. Appellee 5, William Tarnum. Please proceed. Distinguished Justices in the Court, first thing I'd like to point out here is the Red Cross has conceded that the intent of the Testatrix was to fund local organizations and charities. As a matter of fact, they've offered to make sure the money was spent locally. However, the will just doesn't argue to give money to charities, but if you look at the threat of the will, it's to fund charitable organizations that are in the community, not just give money to the recipients. Now, first of all, we need to look at the will as a whole. And the will as a whole, if we look at it, it shows an intent to fund local organizations and charities. So the question in this case now is do genuine issues of material fact under 2-615 and 2-619 motions exist which makes a dismissal improper? And this reviewing court applies a de novo review. Now, does a latent ambiguity exist in this will? Or does the will clearly state the West Central Illinois chapter of the American Red Cross? If an ambiguity exists, then the court should consider extrinsic and parole evidence. So if we apply the strict did-not-cease-to-exist fiction, which is a fiction, if we apply the strict did-not-cease-to-exist standard, do we ignore the fact that it's not serving substantially the same people and the same people that the testator desires? Why would the testator desire to serve people in Missouri or Iowa? The first national case versus London case that's cited in the briefs, I think it's important to point out that that was all one city and one community. It was the same town. And the hospitals were found to be serving substantially the same individuals. And does the function of the charity not change in the Citizens Bank versus Paris case? This was a case where surrounding counties of Edgar County would continue. Notice the word surrounding counties. That doesn't mean three states, 21 counties, none of them connected to each other. And I think I pointed out in the brief that it's only about 16 percent of the new area that would be encompassed by the service area. So the question is, I feel, is it a latent ambiguity or the fact that it says West Central Illinois chapter in the American Red Cross is clear? Now, if it's clear, according to the Haynes versus Illinois House for the Blind case, if it's clear and intelligible and suggests but a single organization, then when it says the West Central Illinois chapter, the American Red Cross, this is clear and intelligible and there's no ambiguity. It doesn't say Quad Cities and West Central Illinois chapter. It says the West Central Illinois chapter, which was located in Galesburg, Illinois. So if it's clear, then I shouldn't even have to argue an ambiguity. But if there is an ambiguity of the fact that this no longer exists, regardless of the fiction that's attempted to say that it's still there, if a latent ambiguity, then extrinsic and parole evidence should have been used and the affidavit should have been considered. So if we look at the four corners of this will, is it ambiguous? Well, what tailoes, what driving force is in this will? What common thread runs through this? Well, the common thread that runs through the will is to give the money locally and fund local organizations. That is the clear thread which runs through the will. So that's the driving force, what Aristotle would say the tailoes of this. It doesn't say the Quad Cities and West Central Illinois chapter in there. It says the West Central Illinois chapter. So in this case, the argument is, well, the charitable purpose would be defeated if this gift is disallowed. But it's going to go under the residuary clause. It's going to go to other local organizations. It's not going to just die and not go. It's going to go to local organizations which are more clearly in line with what her intent was to fund local organizations. Now, the court finds a latent ambiguity or ambiguity. The affidavit should have been considered. And she should be allowed to show what she meant by what she did say. She said the West Central Illinois chapter of the American Red Cross. So the question is, why did she say that? What did she mean when she said that? The affidavits and facts on this, this isn't a case which was talked about in Rodish v. Moore that we don't impute what she meant to say. We say why she said what she meant. In other words, why did she say West Central Illinois chapter of the American Red Cross if she didn't mean West Central Illinois chapter of the American Red Cross? Well, I think if you look at the common thread in the will, if you look at the whole will, it just isn't the point of the will. It's not the point of the will. It's not the point of the will. It's not the point that the money is being spent locally, but it's used to fund local organizations that are there. So I think that's where the key is. Sure, yeah, the money, but as I pointed out, how are we going to enforce their promise? How are we going to do a lot of things? But the idea is that there's all these other organizations that are worthy that are in Galesburg and are remaining in Galesburg. And she was clear what she had in mind. She had in mind the organization existing in Galesburg. She gave money to a church in Galesburg. She gave money to the Galesburg Illinois Lions Club for the Blind. Every organization that she had was located in Galesburg, with the exception of the church that she played the organ in. And that was in Knoxville, which is about five miles away. So it isn't just the idea of spending the money locally. It's the idea of maintaining local organizations that spend that money, keeping these things going. And Harris Bank versus Beach, you know, and this is something I think that's important. Are you saying you cared more about the bureaucracy than the charitable acts of these organizations? Well, it was a local organization. It was something that she had been part of when she was alive. She had been part of that local chapter. She had received services through that local chapter. She knew the individuals in that local chapter. She wouldn't know anybody in the Quad Cities now, especially now. And would she want her money to go into 21 counties? I mean, or would she want to be funding an organization that gives money to 21 counties and isn't just giving it here? That's a hard question. I wanted to talk a little bit about the Harris Bank. The Merge Red Cross organization serves Galesburg, right? Promise? You mean the Red Cross statement that used it around the Galesburg area? Pardon me, Your Honor. Unenforceable promise? I don't think it's enforceable. I mean, I don't know how we would enforce it. I mean, if the court interprets that to go to what the court would be saying is basically, okay, well, it goes to the Red Cross no matter where they're at. That basically is what it says. So how do we enforce that? They're not saying it goes to the Red Cross wherever they're at. It said that what she named merged into this other entity, which isn't International Red Cross. It's an International Red Cross, but I mean, it not only has a flavor of being the Red Cross, it has a flavor of being local chapters. As I mentioned, and which the court admitted in the evidence, was all of the activities that was done locally to raise money for the local chapter of the Red Cross. I mean, this was done so they had their identity as a separate entity, and they had separate local people that were running this entity. And as a result of that, when that says severed or gone, then I think her point of, if you look at the whole point through the will, the common thread, I think it's pretty clear that she wanted local organizations to run these things. Now, I think basically, as I was mentioning about Harris Bank case versus Beach, if the court finds an ambiguity here, either way, I mean, if the court finds an ambiguity here, the action for construction continues and the court is given greater latitude to determine the testator's intent. So, I mean, if there's any doubt what she meant, I mean, I think that we could have testimony on that issue, which was raised by the affidavits. And I think that, I don't think that we should go on a fiction here that this is the same organization just because it's subsumed in a huge umbrella organization, that this is the same organization in spirit and soul than the organization that it superseded. Interestingly, when cases talk about whether something is lapsed or not lapsed, usually it's like a change afterwards. Like this change from the Red Cross happened before the will was signed, didn't it? I mean, with the merger. Yeah, it's a merger. But the question is, should the merger have occurred before she signed the will? About the same time, really. I mean, it was close. The judge found, I guess, it was signed. Signed, but it wasn't really mentioned or there wasn't too much talk about it. They had heard some talk about it, but, I mean, it was so recently that... It's clear at the time the will was signed, the particular West Central Illinois chapter of the Red Cross, Galesburg, did not separately exist, but had merged into the Quad Cities and West Central Illinois chapter. Yeah, I'm not disputing that it had merged in there. But the question is, what's in the Testatrix's mind? I mean, and I think there's some testimony that could be very enlightening on that issue that was mentioned in the affidavits that would be brought at trial. Well, what about, like, in Kids Hope, where the will specifically said, if any organization named here, you know, ceases to exist, then Biden, among the remaining... Well, I think that was a trust, wasn't it? Pardon? I think Kids Hope was a trust, wasn't it? Which had a longer duration, potentially. I think the Kids Hope case... If it wasn't a trust, does that change anything, as far as whether the gift fails or not? Well, I think that the basic individuals that were served were substantially the same individuals. There were some surrounding Illinois counties. But, I mean, as I pointed out before, this wasn't 21 counties over three states. I mean, this was Edgar County and the surrounding Illinois counties. So, I mean, basically, the organization wasn't completely divorced from the reality of the service area like this is. Two minutes, please. Okay. Suppose that the entity, West Central, had stayed a separate entity until after Ms. Pennington had passed. The money went to them, and then they dissolved or merged. Would the gift... I mean, does it matter? I mean, would you be making an argument that the gift should come back? Because now, I mean, isn't that sort of the same thing? I mean, there's no clause in here saying it's for local use only. I mean, what would stop Habitat in Knox County to send her money somewhere else once they got control of it? Well, when you're dealing with the real world, sometimes you can't think of all these contingencies. And I would suggest that basically, Mrs. Pennington was close to death, and she knew it. She was competent. I think it comes down to if it would have been after the fact, I think the same issue would come up no matter what. And, you know, what happens down the road, as far as I don't think controls the legality of what's happening here, that's what... Because it wasn't, I mean, for her, it wasn't as much about if it was somebody from Galesburg actually receiving the service, but about people in Galesburg being able to determine the services that they would provide. That's kind of the idea. And if you look at what I believe is a common thread in the will, that's what you see, all of these organizations that are administered by people in Galesburg, you know, for local purposes. And I think that, you know, this is something that I could tell by... Well, I shouldn't say this because I'm talking about stuff that's basically between the client and I, but... The office hasn't ceased to operate in Galesburg, has it? Well, they don't have an office there anymore. They don't have an office a lot of places. They don't have them in Somalia either, and they go there. But the fact they don't have an office in every town or county doesn't mean they don't show up when their help is needed. Well, I used to be chairman of the local Red Cross here, believe it or not, and basically you felt that interaction all the time between the national chapter and the local chapter, which you don't have that anymore. Let me just ask you this. In Kid's Hope, the Supreme Court said the correct test was whether under this merger or whether the new corporation with which the charitable organization merged was no longer suited to carry out the purposes of the bequest. So is there any reason that this Red Cross office out of Rock Island or the Quad Cities, wherever it is over there, is not suited to carry out the purposes of the bequest? Well, they don't have any staff here in Galesburg that I'm aware of. I mean, I think that they have one office in the Quad Cities. I mean, I haven't really seen a presence there. I don't know what their... They have no corporate structure in the area anymore. I don't know. I mean, all I know is it's 21 different counties that they're spread out over, and I don't think they have any larger staff as a result of that. So, okay. Thank you. Thank you. May it please the Court, my name is Bill Farley, Counsel for the American Red Cross, and we ask that this Court affirm the trial court's judgment dismissing the petition with prejudice. Justices, it seems like you're already aware of the facts, which are a pretty simple set of facts, so I'll dispose of that summary. There are three main reasons why the trial court ruling should be affirmed. The first reason, and we believe the threshold reason, is that under Illinois law, the West Central Illinois chapter of the Red Cross did not cease to exist. And as the Court is aware, the rule in Illinois is that when a charitable organization merges with another for the purposes of receiving a bequest, that organization does not cease to exist unless the new organization is not suited to carry out the purpose of the bequest. And for this reason, we don't even need to get to the blatant ambiguity argument. We don't need to get to the extrinsic evidence argument. This is the threshold issue to be decided. If the Court decides with the Red Cross and applies this rule, which I like to call the existence rule for short, then that's dispositive of the case and the trial court properly dismissed the petition. The second reason the trial court ruling was correct is that even if the existence rule does not apply and there is a blatant ambiguity on the face of the will, the extrinsic evidence that was offered is improper and inadmissible. The affidavits that were offered consist entirely of inadmissible hearsay statements. So under Illinois law, those affidavits cannot be considered in response to a 2619 motion and they're improper to contest the motion to dismiss. And the third reason is that even if the affidavits make it past the hearsay hurdle, they are still in conflict with the terms of the will and therefore, under Illinois law, should not be considered for that reason. But going back to the very first issue, which is the West Central Illinois chapter not ceasing to exist. Your Honor, I'm sure you're aware of the cases, but I just wanted to point out a few of the pertinent facts that support the application of the existence rule in this case. First of all, the gift to the Red Cross in the will was unconditional. There were no restrictions placed on the gift based on the location of the chapter or the area of service by the chapter. And the testator could have put in conditional language if she wanted to. For example, there is a gift to the Galesburg, Illinois Lions Club and in the provision for that gift, it said, quote, to be used for the blind. Now, I'm not arguing that that is a specific condition that is applied to that provision of the gift, but it suggests that she was aware that other language could have been inputted for each of the different organizations. The West Central Illinois chapter does not have Galesburg, Illinois next to it, as some of the other gifts do. And one of the gifts, as the Executives noted, was located outside of Galesburg. Another important fact is that prior to the merger, the West Central Illinois chapter served more than just Knox County. It served Knox County, Henderson County, and Warren County. This is not a situation where there was a local chapter in Galesburg and it served only Galesburg and no other people. It served three different counties before the merger. So you have a situation that there's a chapter that served Galesburg and other counties before the merger, and now there's a chapter that serves Galesburg and other counties after the merger. Again, there's no condition put in the will that the money only be used for Galesburg and Knox County. And as the Justices noted, the Red Cross has provided an affidavit saying that it promises to use the funds from Ms. Pennington's generous gift to be used for services in Galesburg and Knox County. Now, the Red Cross would argue that puts the gift in even a stronger position than, you know, if the intent is to keep the money within Galesburg, then the Red Cross does not see how that promise does anything but serve the intent of the will. Now, one of the Executrix's main arguments is that there is a latent ambiguity because of the change from the West Central Illinois chapter to the Quad Cities in West Central Illinois chapter. But the application of the existence rule defeats the latent ambiguity argument. If you think about it, in the Florida State case and the Kids Hope case, there's the same latent ambiguity issue, presumably. You have a gift from a top stater assigned to an organization. That organization goes through changes, name changes, mergers. In the Kids Hope case, the original building had been closed. So it's not, you know, the exact same thing by name as what was named in the will. It's the same kind of latent ambiguity argument. However, the Supreme Court found that the original organization still continued to exist because the new organization was able to carry out the charitable purpose of the bequest. And moving to the second reason why the trial court ruling should be affirmed, even if the existence rule does not apply in this case and there's a latent ambiguity on the face of the will, the extrinsic evidence offered in this case is entirely improper. The extrinsic evidence consists of two affidavits that are just filled with inadmissible hearsay statements. Under Supreme Court Rule 191, affidavits in support of 2619 motions must consist of admissible evidence. And hearsay evidence is, of course, inadmissible unless there's an exception. And we've cited cases in our briefs that state that affidavits based on hearsay cannot warrant relief for Section 2619 motions. And the executrix has even admitted in the reply brief that the affidavits themselves consist of hearsay statements. The rationale for using them is that later on in the case, if it is to continue at the trial level, there will be testimony about what was said in the affidavits. Well, those would still be hearsay statements, even if you brought in a witness to testify this is what someone else said. That's still hearsay, you know, either way, whether it's in an affidavit or whether it's through testimony. The Red Cross has no opportunity to cross-examine these statements, to test the veracity of these statements. They're hearsay no matter what. So the executrix should not be allowed to create an issue of material fact on a 2619 motion based on evidence that's inadmissible under Illinois law. Moving to the third reason, even if the affidavits pass the hearsay hurdle, under Illinois law, if you have statements that are contrary or in conflict with the terms of the will, they cannot be used to invalidate the will. Again, a couple facts on this point. The gift to the Red Cross was unconditional, and the will was executed three months after the merger occurred. The merger occurred in October 2015, and the will was executed in January 2015. And even some of the statements in the affidavits suggest that something was going on with the West Central Illinois chapter, yet she still decided to give the gift to the Red Cross. So the statements in the affidavits that she would revoke the gift or she wouldn't want to give the gift to the Red Cross if there wasn't a local chapter in Galesburg, those are in conflict with the clear terms of the will that provide the gift to the Red Cross without any conditions. And if your honors have any questions, I'm happy to entertain. And that change had occurred before, the merger had occurred before she signed the will. That's correct. Thank you. I just want to mention, as I mentioned before, the cease to exist standard, I mean, it is a fiction. And it's not really cognizant of reality. Because what it does is it applies a standard that I would submit that in this case shouldn't be applied. In other words, where you've got a situation where most of the services or the people that are going to get the services are outside, way outside as far as 21 counties versus three, three states. This is a case where the fiction that the West Central Illinois chapter cease to exist, you know, should not be applied. It did cease to exist. It was there. It's gone now. Even by the terms of the merger, none of the members of the board were allowed to serve on the new organization. It's gone. And apply a fiction, you know, that it did not cease to exist. To me, in this case, it's just not realistic. So speaking of having fictions, you said you used to run a Red Cross chapter? I was chairman. Okay. Local Red Cross chapters, sometimes, whether it's Galesburg or Peoria or Ottawa. And so there's a flood in Texas. And so they get called on, say, hey, send us some of your supplies, your resources, whatever. We need help because we've got a major disaster. We've got North Carolina, for example, more recently. Local chapters ever send some of their resources to North Carolina in a flood or Texas or wherever? Well, they would go through a local committee of that organization. That was the safety committee. There was a disaster committee. And those people on those various committees, they would get together, and then they would decide what supplies would be sent down. And they would decide, you know, what would be done. But I mean... So if the West Central chapter still existed, and you've got this hurricane and subsequent flooding and this awful disaster in North Carolina, if the West Central chapter still existed and decided to send, hey, we just got this $2 million given to us, and my gosh, we're going to send it down to help those poor folks in North Carolina. Nothing's stopping them, is there? You mean the Red Cross would ask us, for example, to send the $2 million down? And you say, well, we will, yeah. We just got $2 million, and it was pennies from heaven, and so we're going to use it right now to help because... It was a mission, you know. But that doesn't mean that there wasn't a separate organization that was in existence to make the decision. I mean, you know... Okay. Basically, the idea that it only served Knox, Warren, and Henderson, the point of the matter is there was an office in Galesburg, and this individual, along with other individuals, became active and involved with that office. It's gone now. And... They have offices in Warren and Henderson counties? Yes. They had an office there, yes. They had an office in Warren, but... Henderson. No, no. Still served it, though, right? Yeah, but you've got to understand, Warren and Henderson are just... They're like eight miles apart. I know all about Warren and Henderson counties. They haven't run in 21. So the... So there was no office there, and yet they serviced it, and that was part of the request. Well, the unique circumstances of that relationship between Warren and Henderson, I mean, they are intermingled on several things. I mean, even through the public defender's offices and everything else, there's a lot there. But in any event... Okay. Thank you, counsel, and thank you both for your arguments. We'll take this matter under advisement and render a decision.